# United States Court of Appeals for the Federal Circuit

Revised: February 5, 2008

2007-1174

DAVID H. SITRICK,

Plaintiff-Appellant,

v.

DREAMWORKS, LLC, NEW LINE PRODUCTIONS, INC.,
NEW LINE HOME ENTERTAINMENT, INC., WARNER MUSIC GROUP, INC.,
WARNER BROS. RECORDS, INC., WARNER-ELEKTRA-ATLANTIC CORPORATION,
WARNER HM VIDEO (doing business as Warner Reprise Video),
WARNER BROTHERS ENTERTAINMENT INCORPORATED,
and WARNER BROTHERS PICTURES,

Defendants-Appellees.

Keith V. Rockey, Rockey, Depke, Lyons & Kitzinger, LLC, of Chicago, Illinois, argued for plaintiff-appellant. On the brief was Kathleen A. Lyons.

Jeffrey Martin Olson, Sidley Austin LLP, of Los Angeles, California, argued for defendants-appellees. With him on the brief were Robert A. Holland and Samuel N. Tiu.

Appealed from: United States District Court for the Central District of California

Judge Stephen V. Wilson

# United States Court of Appeals for the Federal Circuit

2007-1174

DAVID H. SITRICK,

Plaintiff-Appellant,

v.

DREAMWORKS, LLC, NEW LINE PRODUCTIONS, INC.,
NEW LINE HOME ENTERTAINMENT, INC., WARNER MUSIC GROUP, INC.,
WARNER BROS. RECORDS, INC., WARNER-ELEKTRA-ATLANTIC CORPORATION,
WARNER HM VIDEO (doing business as Warner Reprise Video),
WARNER BROTHERS ENTERTAINMENT INCORPORATED,
and WARNER BROTHERS PICTURES,

Defendants-Appellees.

Appeal from the United States District Court for the Central District of California in case no. 03-CV-4265, Judge Stephen V. Wilson.

_____

DECIDED: February 1, 2008

_____

Before MICHEL, <u>Chief Judge</u>, RADER and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

David Sitrick (Sitrick) appeals the United States District Court for the Central District of California's judgment that the asserted claims of his two patents are invalid for lack of enablement, indefinite, and not infringed. He also appeals the order of the United States District Court for the Northern District of Illinois transferring the case to the Central District of California. We affirm the Central District of California's judgment

of invalidity and conclude that Sitrick waived his objection to the Northern District of Illinois's transfer order.

BACKGROUND

The technology at issue involves integrating a user's audio signal or visual image into a pre-existing video game or movie. Sitrick is an individual inventor and owner of U.S. Patent Nos. 5,553,864 (the '864 patent) and 6,425,825 (the '825 patent). The Defendants produce and distribute DVDs of various movies, some of which include the allegedly infringing product, known as "ReVoice Studio." The ReVoice Studio feature allows users to combine their own voice with pre-existing video images stored on the DVD.

Sitrick sued Defendants in the Northern District of Illinois, alleging infringement of claims 54 and 56 of the '864 patent and claims 1, 20, 49, 57, 58, 62, 64, and 69 of the '825 patent. The Northern District of Illinois granted Defendants' motion under 14 U.S.C. § 1404(a) to transfer the case to the Central District of California (district court). After the case was transferred, the first and only time Sitrick challenged the transfer order arose in this appeal. Sitrick filed multiple amended complaints after transfer, which acknowledge that "[v]enue properly lies [in the Central District of California]."

Defendants filed a motion for claim construction and moved for summary judgment on a number of grounds. The district court engaged a Special Master, who issued a report on each of the pending motions. The Special Master's cursory report regarding Defendants' motion for summary judgment of invalidity for lack of enablement included no discussion of the asserted claims. The Special Master nonetheless

recommended denying the motion because neither Sitrick nor Defendants presented specific evidence regarding the level of ordinary skill in the art.

The district court declined to adopt the Special Master's recommendation and in a detailed and thorough opinion granted summary judgment in favor of Defendants because it found all asserted claims of the '864 and '825 patents invalid for lack of enablement as to movies. Sitrick v. Dreamworks, LLC, No. 03-4265 (N.D. Cal. July 21, 2006). The district court did not reach the issue of whether the asserted claims would have been enabled for video games. Id. at 73. The district court also found the claims of the '825 patent invalid for indefiniteness, and found there existed no triable issue of fact as to infringement of claim 54 of the '864 patent. Id. at 17, 84-91.

The asserted claims encompass both video games and movies. The '864 patent states that the system "provides an environment whereby a user can create a video or other image . . . and whereby the user created image . . . can be communicated and integrated into the audiovisual presentation, and game play of a video game." '864 patent col.1 ll.54-62. The '825 patent states that "[t]his invention relates to predefined video and audiovisual presentations such as movies and video games." '825 patent col.1 ll.9-10. The Summary of the Invention provides that the "present invention encompasses an entertainment system capable of integrating images into a predefined audiovisual presentation" through use of a "controller" said to receive audio and video signals from any source and that "analyzes the audio and video signals and modifies the signals to integrate the user image into the audiovisual presentation." Id. at col.2 ll.30-45. Despite his arguments on appeal, Sitrick has conceded that the asserted claims encompass movies. He convinced the district court to deny Defendants' request

that the claims be limited to video games. And he accused Defendants' movies of infringing the claims by incorporating computer-generated effects during production. The '825 patent characterizes as "crude" prior art systems in amusement parks that use a "blue screen, [and] a compositing computer system" to incorporate audience members into a movie clip. Id. at col.2 ll.20-27. In such prior art, the "audience member's image [merely] overlays the movie clip and is not blended into the movie." Id. According to the '825 patent, "[u]sing this approach, there can be no realistic interaction between the audience member and the cast in the movie clip." Id.

The patents also describe "user images" that consist of audio information. The '864 patent states that "[a]udio signals go beyond simple spoken words and phrases." '864 patent col.6 ll.3-4. The audio signals "can be analyzed and processed to generate voice parameters which are then used by the system to synthetically generate a voice corresponding to and sounding like the audio signals from which the voice parameters were modeled (e.g., the actual user's voice, tonal quality, pitch, etc.)." Id. at col.6 ll.4-9. The Special Master construed the term "voice synthesizer" in claim 54 to mean "any computerized electronic apparatus for the production and control of a voice sound." The district court rejected this construction because it read out of the claim the limitation "that the synthesizer must 'model' the inputted voice sample." Sitrick, slip op. at 11. Thus, the district court determined that claim 54 of the '864 patent is directed to "voice parameter data [that is] used as a model for a voice synthesizer to produce an entirely synthetic voice." Id. at 68.

Claim 56 of the '864 patent and all asserted claims of the '825 patent require "integration" or "substitution" of a visual or audio "user image" in place of a "pre-defined

2007-1174                                    4

image," "pre-defined character image," or "character function" within a "presentation." The patents describe this "integration" or "substitution" as being performed by an "Intercept Adapter Interface System" (IAIS), which the district court found "the most fundamental part of both the '864 and '825 patents." Id. at 56. In a video game system, the IAIS functions to intercept address signals coming from the video game apparatus and going to the game card or storage card. If address signals correspond to the character functions that are to be replaced with a user image, the IAIS reconfigures the signals so that when the signal gets to the game card or storage card, the user image is substituted for the predefined character image.

The patents state that they are applicable to any "audiovisual image source [that] provides an audiovisual presentation output such as video (video cassette player or recorder, cable or broadcast television, laser disk, audiovisual, digital video tape, formatted image data [e.g., PICT]), audio tape or disk, which output is coupled to a display." '825 patent col.17 ll.3-8. The IAIS "analyzes the output of the image source . . . and identifies and intercepts selected predefined character images of the audiovisual presentation" and substitutes a user image. Id. at ll.9-13. The IAIS "allows for the replacement of the user image for the pre-existing character image in the presentation. Thus, it is the IAIS that operationalizes the invention." Sitrick, slip op. at 56. Unlike video games, "[p]re-existing movies do not employ discrete address and control signals, or any other means for requesting separate image segments to be assembled into the character or the overall image that appear within each frame of the presentation." Id. at 59.

The district court found that despite the importance of the IAIS, the patents do not explain how it would function outside of a video game. For movies, the '825 patent explains that:

> [t]he controller 260C also provides intercept logic functioning as discussed elsewhere herein such that the adapter interface system 110C additionally provides the intercept function, whereby the adapter interface system 110C selectively substitutes user image data for predefined character image data so as to provide an audiovisual presentation that includes the image integrated therein. The intercept function analyzes the signals to determine when it's appropriate to make substitutions of user image data for predefined game character data.

'825 patent col.24 ll.56-65. In the figure illustrating this process, the controller 260C is represented by a blank box as illustrated below:



FIG. 4C

Id. at fig.4C. The '825 patent states that:

> There are numerous ways to implement the analysis system 260. For example, address and/or control and/or data signal analysis, timing analysis, state analysis, signature analysis, or other transform or analysis techniques can be utilized to identify when particular predefined player graphic character segments are being accessed and transferred to the video game apparatus . . . .

Id. at col.22 ll.47-54 (emphasis added).  The district court found that Defendants' experts demonstrated that none of the identified analysis techniques for selecting, analyzing, or identifying character functions or intercepting character signals in video games would work for movies.  Sitrick, slip op. at 58.  The district court determined that:

> Movies do not have easily separable character functions, as video games do, and the patent does not explain how the IAIS either selects the character functions to be substituted for a user image or intercepts signals in order to effectuate that substitution.
>
> While in video games character functions are separately retrieved by discrete address signals, and the motion of each is controlled by discrete control signals, character images in pre-existing movies and animations are inseparable from other surrounding images.  Pre-existing movies do not employ discrete address and control signals, or any other means for requesting separate image segments to be assembled into the character or the overall image that appear within each frame of the presentation.  Rather, as Defendants' expert, Dr. Phillips, explains:
>
>> Video signals representing pre-existing movies and animation are either digital or analog representations of a series of frames, wherein each frame comprises pixel or scanline information of the overall image in the frame.  In contrast to a video game, with a dynamically created scenario, motion in a movie is provided by slightly varying the image of the character in each frame such that the continuous display of the frames creates the illusion of motion . . . .
>
> (Tiu Decl., Ex. L at 346.)  The patent never discusses how a character function or predefined image can be identified and separately carved out of a frame.

Id. at 58-59.  Defendants' experts opined that given the technological differences between video games and movies, the disclosure regarding video games did not enable use of the IAIS to substitute or integrate user images in movies.

The district court also determined that Sitrick presented no evidence to contradict Defendants' evidence that the '864 patent failed to enable modeling a voice for

reproduction by a voice synthesizer, as required by claim 54. Because the district court concluded that Sitrick had failed to introduce evidence that raised any genuine issue of material fact regarding enablement of the substitution or integration of user images in movies, or regarding enablement of the modeling of a voice, the district court granted summary judgment of no enablement.

## DISCUSSION

## I.

We review the grant of summary judgment de novo. Liebel-Flarsheim Co. v. Medrad, Inc., 481 F.3d 1371, 1377 (Fed. Cir. 2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112, ¶ 1 is a question of law, reviewed de novo, based on underlying facts, which are reviewed for clear error. AK Steel Corp. v. Sollac, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003). The evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence because a patent is presumed valid. Id. The "enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." Id. at 1244.

The full scope of the claimed invention must be enabled. See Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc., 501 F.3d 1274, 1285 (Fed. Cir. 2007). The rationale for this statutory requirement is straightforward. Enabling the full scope of each claim is "part of the quid pro quo of the patent bargain." AK Steel, 344 F.3d at 1244. A patentee

who chooses broad claim language must make sure the broad claims are fully enabled. "The scope of the claims must be less than or equal to the scope of the enablement" to "ensure[] that the public knowledge is enriched by the patent specification to a degree at least commensurate with the scope of the claims." Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc., 166 F.3d 1190, 1195-96 (Fed. Cir. 1999).

The district court construed the asserted claims to include both video games and movies. Sitrick does not appeal this claim construction, but instead argues that the district court erred by concluding that for the purpose of determining enablement it could ignore the teachings of the patents related to video games. We disagree with Sitrick's characterization of the district court's opinion. The district court clearly considered the entire specification and all teachings related to video games, including all of the evidence regarding how one could substitute a user image for a pre-existing character image.

Because the asserted claims are broad enough to cover both movies and video games, the patents must enable both embodiments. See Auto. Techs. Int'l, 501 F.3d at 1285 ("Disclosure of only mechanical side impact sensors does not permit one skilled in the art to make and use the invention as broadly as it was claimed, which includes electronic side impact sensors."). Even if the claims are enabled with respect to video games—an issue we need not decide—the claims are not enabled if the patents do not also enable for movies.

We are mindful that Defendants have the evidentiary burden to show facts supporting a conclusion of invalidity by clear and convincing evidence. AK Steel Corp., 344 F.3d at 1238-39. Here, Defendants met their evidentiary burden and showed that

Sitrick did not enable the full scope of the asserted claims. Defendants showed with clear and convincing evidence that one skilled in the art could not take the disclosure in the specification with respect to substitution or integration of user images in video games and substitute a user image for a pre-existing character image in movies without undue experimentation. Defendants supported their motion for summary judgment of invalidity by reference to the teachings of the specifications and the opinions of their two experts.

An enablement analysis begins with the disclosure in the specification. Neither patent specification in this case teaches how the substitution and integration of a user image would be accomplished in movies. Claim 56 of the '864 patent and claims 1, 20,[1] 49, 57, 58, 62, 64, and 69[2] of the '825 patent provide for the "integration" or "substitution" of a visual or audio "user image" in place of a "pre-defined character image" or "character function" within a "presentation" such as a motion picture. After thoroughly analyzing both patents, the district court determined that the specifications do not disclose how the IAIS or Controller 260C would function for movies. Sitrick, slip op. at 57. We agree. The patents do not teach how to implement the "intercept logic functioning" of Controller 260C in the context of movies. The patents do not teach how the IAIS and its Controller 260C would perform such necessary steps as "selecting" and "analyzing" the predefined character image in a movie, or "integrat[ing]" or "substituting"

---

[1] The district court adopted the Special Master's finding that claim 56 of the '864 patent and claims 1 and 20 of the '825 patent employ means-plus-function clauses whose corresponding structure is the IAIS and its Controller 260C.

[2] Method claims 49, 57, 58, 62, 64, and 69 of the '825 patent provide for "selecting" a portion of a predefined "presentation," analyzing that portion, and "integrating" or substituting a "user image" for a predefined image in the "presentation" based on the selection and analysis.

the image in movies. As the district court recognized, "[m]ovies do not have easily separable character functions, as video games do, and the patent does not explain how the IAIS either selects the character functions to be substituted for a user image or intercepts signals in order to effectuate the substitution." Id. at 58.

Defendants' two experts explained that one skilled in the art would not to be able to take the teachings regarding video games and apply them to movies. Both experts explained that movies and video games are technically different. The experts opined that the claims are not enabled because the analysis techniques described in the specification for identifying character functions or intercepting character signals have no relevance to movies. Defendants thus carried their burden of showing by clear and convincing evidence that the claims are not enabled for "integrating" or substituting a "user image" in movies. With respect to audio substitution, the district court determined that Defendants showed by clear, convincing, and undisputed evidence that it is difficult, if not impossible, to "isolate any one voice [from] the rest of the sounds" in soundtracks in pre-existing movies. Id. at 66.

Sitrick argues that the testimony of its expert, Dr. Vacroux, creates a genuine issue of material fact as to the enablement of visual substitutions for movies. The district court correctly held that Dr. Vacroux's opinion regarding enablement did not raise a triable issue of fact because it was: (1) "conclusory" and "unsupported by any actual information," and (2) presented by a person who "admitted to not being skilled in the art of movie making . . . ." Id. at 60-62. We agree. Conclusory expert assertions cannot raise triable issues of material fact on summary judgment. See Dynacore Holdings Corp. v. U.S. Philips Corp., 363 F.3d 1263, 1278 (Fed. Cir. 2004). Further, the

district court correctly pointed out that Dr. Vacroux acknowledged repeatedly that he did

not have expertise in movies:

> Q.     Okay. From reading the patent and reading those many, many pages, would you be able to determine how to integrate a user image into a motion picture?
> A.     I think that someone more familiar with motion pictures than I am probably could, but I don't know if I could do it.
> . . .
> Q.     Would you know how to modify the flowcharts such that the invention could be applied to motion pictures?
> A.     I already mentioned that motion pictures is not something that I'm familiar with.

Sitrick, slip op. at 60-61.  Enablement is determined from the vantage point of one

skilled in the art.  AK Steel, 344 F.3d at 1244.  The district court properly held that Dr.

Vacroux's equivocations regarding whether someone skilled in the art could perform the

claimed "integrat[ing]" and "substituting" in movies does not create a genuine issue of

material fact.

II.

Sitrick argues that the district court erred in construing the phrase "voice

synthesizer" in claim 54 of the '864 patent.  Claim 54 reads as follows:

> 54. A method of integrating a user voice image into a presentation output, the method comprising the steps of:
> > sampling a user's voice;
> > analyzing the sampled user's voice to provide user voice parameter data representative of the user voice image;
> > storing the user voice parameter data;
> > synthesizing and interjecting the user's voice into the presentation output responsive to the user voice parameter data comprising the step of associating a particular predefined character image within the presentation with the user's voice so that when the particular predefined character is speaking, <u>the user voice parameter data is input as a model to a voice synthesizer</u> that effects the integration of the user's voice into the presentation output as associated with the predefined character image.

'864 patent col.35 ll.32-48 (emphasis added).

The district court construed claim 54 as requiring that voice parameter data be used as a model for a voice synthesizer to produce an entirely synthetic voice and not simply a playback of the user's sample. Sitrick argues that the district court incorrectly required the voice synthesizer to produce "new words that the user did not actually say." But the district court plainly stated that "the synthetic voice could say precisely what the user had said in the sample, and this would be within the claim, as long as the voice was not simply a playback of the user's sample but was generated from the sample and the extracted voice parameters." Sitrick, slip op. at 12 (emphasis in original). The district court's claim construction is correct in view of the claim language itself, requiring "the user voice parameter data [be] input as a model to a voice synthesizer." This construction is supported by the specification. '864 patent col.6 ll.4-9 (audio signals "can be analyzed and processed to generate voice parameters . . . to synthetically generate a voice corresponding to and sounding like the audio signals from which the voice parameters were modeled (e.g., the actual user's voice, tonal quality, pitch, etc.)"). Further, this construction is supported by Defendants' expert, who explained, "the voice qualities of a person . . . are difficult and problematic to map onto novel speech. I have found no discussion in these patents addressing these issues." Sitrick, slip op. at 68-69.

Applying the correct claim construction, the district court determined the '864 patent fails to enable the voice synthesis required by claim 54. Summary judgment that claim 54 is invalid for lack of enablement was entirely proper because Sitrick "presented

no evidence to contradict Defendants' argument regarding enablement for modeling a voice for reproduction by a voice synthesizer." Id. at 69.

III.

Sitrick also argues that the Northern District of Illinois improperly transferred the case to the Central District of California. After transfer, the only time Sitrick challenged the transfer order was in this appeal. Sitrick argues that this court has jurisdiction to review all final decisions in cases that arise under the patent laws. The waiver of an objection to a transfer order, however, is a procedural matter not unique to patent law, which we review under the law of the regional circuit where the appeal from the district court normally would lie. Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75 (Fed. Cir. 1984); Riverwood Int'l Corp. v. R.A. Jones & Co., 324 F.3d 1346, 1352 (Fed. Cir. 2003) ("[W]e apply the law of the regional circuit to the procedural question of waiver").

Sitrick's case was transferred from a district court within the Seventh Circuit to a district court within the Ninth Circuit. In the Ninth Circuit, objections to venue are waivable. See Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986) ("A defendant must object to venue by motion or in his answer to the complaint or else his objection is waived.") (citing Fed. R. Civ. P. 12(h)(1)).

Sitrick litigated his case in California for more than three years, and filed multiple amended complaints there, which acknowledge that "[v]enue properly lies [in the Central District of California]." Sitrick did not move to retransfer to the Northern District of Illinois or some other forum. Therefore, we determine that Sitrick waived his right to complain on appeal that the transfer motion should not have been granted.

## CONCLUSION

Because we decide that claims 54 and 56 of the '864 patent and all asserted claims of '825 patent are not enabled, we need not reach the other issues.

## **AFFIRMED**