NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

—————————————

**SIMPSON STRONG-TIE COMPANY INC.,**
*Appellant*

**v.**

**COLUMBIA INSURANCE COMPANY,**
*Appellee*

—————————————

2023-1944

—————————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. PGR2021-00109.

—————————————

Decided: January 7, 2025

—————————————

RICHARD CRUDO, Sterne Kessler Goldstein & Fox PLLC, Washington, DC, argued for appellant. Also represented by KRISTINA CAGGIANO KELLY, MICHELLE HOLOUBEK, WILLIAM MILLIKEN.

BRADLEY SCOTT EIDSON, Stinson LLP, St. Louis, MO, argued for appellee. Also represented by KURT JAMES, JOHN R. SCHROEDER.

—————————————

Before REYNA, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Columbia Insurance Co. owns U.S. Patent No. 11,021,867. After Columbia brought an infringement action against Simpson Strong-Tie Company, Inc., Simpson petitioned the Patent and Trademark Office (PTO) to institute a post-grant review, under 35 U.S.C. § 321, of all the claims of the '867 patent for unpatentability. *See generally* 35 U.S.C. §§ 321–329. The PTO's Patent Trial and Appeal Board, acting for the PTO's Director, instituted the post-grant review and eventually determined in its final written decision that most, but not all, claims of the '867 patent were unpatentable, as Simpson asserted. At issue before this court are several claims that survived the review. In particular, the Board rejected indefiniteness and enablement challenges to claims 13, 14, and 18–20 of the patent as issued and to substitute claim 32 added during the review. *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, 2023 WL 2598961, at *4 (P.T.A.B. Mar. 15, 2023) (*Decision*).

Simpson appeals. We clarify that, for one claim (and its dependents) modified by a certificate of correction under 35 U.S.C. § 255 after the post-grant review was sought, the Board's final written decision adjudicates the patentability only of the uncorrected version, not the corrected version. With that clarification of the decision's scope, we affirm.

I

A

The '867 patent describes a hanger for use in constructing buildings—specifically, for attaching a horizontal piece such as a joist or floor truss to a vertical wall when extra wallboard or similar sheathing is to be added to the wall for fire-retardant purposes. '867 patent, col. 1, lines 19–21, 32–36; *id.*, col. 3, lines 63–64; *id.*, col. 4, lines 18–24, 31–33.

SIMPSON STRONG-TIE COMPANY INC. v.                    3
COLUMBIA INSURANCE COMPANY

One embodiment is illustrated by the below figure.  In that embodiment, a channel-shaped portion (38) supports the structural component (not shown) that sits on the base (44) between its side walls (46) and butts up to the back wall(s) of this portion (48).  A connection portion (42) is used to attach the hanger (26) to the wall framing (not shown) and contains flat back flanges (66) that lie on the building's wall (and are parallel to the channel portion's back wall(s) (48)).  An extension portion (40) contains extension flanges (60) perpendicular to the back flanges that extend to meet the channel portion's back wall(s) (48).  The space (68) between the back flanges (66) and the channel portion's back wall(s) (48) is where fire-retardant sheathing (not shown) fits.  *Id.,* col. 2, lines 45–50; *id.,* col. 4, lines 34–37; *id.,* col. 5, lines 1–3.



*Id.,* Fig. 2.

Independent claim 1 of the '867 patent, on which claims 13 and 14 depend, recites:

> A hanger for connecting a structural component to a wall adapted to have sheathing mounted thereon, the hanger comprising: . . .
>
> an extension portion including first and second extension flanges extending from the channel-shaped portion to the connection portion, each extension flange being configured to extend through the sheathing, **each extension flange lying in an extension flange plane**, the extension flange planes being generally perpendicular to the base plane, the back flange and the channel-shaped portion defining a sheath space sized and shaped to receive the sheathing therein so that the channel-shaped portion is located on one side of the sheathing and the back flange is located on an opposite side of the sheathing when the hanger and sheathing are installed on the wall.

*Id.*, col. 12, lines 15–44 (emphasis added).

Independent claim 16[1] of the '867 patent, on which claims 18–20 depend, recites:

> A hanger to connect **a joist** to a frame wall adapted to have sheathing mounted thereon so that an interior side of the sheathing faces the frame wall and an exterior side of the sheathing faces away from the frame wall, the frame wall including a wooden upper plate and wooden studs extending down from the upper plate, the hanger comprising:

---

[1]    The "a joist" language, which appeared in the original version of this claim, was later changed to "a structural component" by a certificate of correction. *See infra* I.B.

> a channel-shaped portion configured to receive **the structural component**, the channel-shaped portion including a base configured to receive an end portion of the structural component thereon to support the structural component and side panels extending upward from the base; . . . .

*Id.*, col. 13, line 34 through col. 14, line 17 (emphases added).

Substitute independent claim 24 of the '867 patent, on which substitute claim 32 depends, recites:

> A hanger for connecting a structural component to a wall adapted to have sheathing mounted thereon, the hanger comprising:

> a channel-shaped portion configured to receive the structural component, the channel-shaped portion including a base configured to receive an end portion of the structural component thereon to support the structural component, the base having an upper surface configured to engage the structural component, the upper surface lying in a base plane;

> a connection portion configured for attachment to the wall, the connection portion including a back flange having an upper edge, the back flange extending from the upper edge in a direction generally toward the base plane, the connection portion and channel-shaped portion being in a rigidly fixed, spaced apart relation relative to one another as manufactured; and

> an extension portion including first and second extension flanges extending from the channel-shaped portion to the connection portion, each extension flange being configured to extend through the sheathing, each extension flange lying in an extension flange plane throughout its extent from the

> channel-shaped portion to the connection portion, the extension flange planes being generally perpendicular to the base plane, the first and second extension flanges and the channel-shaped portion being formed as one piece of sheet metal, the back flange and the channel-shaped portion defining a sheath space sized and shaped to receive the sheathing therein so that the channel-shaped portion is located on one side of the sheathing and the back flange is located on an opposite side of the sheathing when the hanger and sheathing are installed on the wall.

J.A. 899–900 (cleaned up).

## B

Simpson petitioned the Board for a post-grant review of claims 1–23 of the '867 patent on August 13, 2021. *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, 2021 WL 3610030 (P.T.A.B. Aug. 13, 2021) (*Petition*); *see* 35 U.S.C. § 321. Simpson argued that claims 1–23 failed to meet the definiteness requirement of 35 U.S.C. § 112(b); claims 5 and 17 failed to have an adequate written description as required by § 112(a); claims 1–4, 6, 10, and 11 were anticipated, *i.e.*, failed to meet the novelty requirement of § 102; and claims 1–12, 15–17, and 21–23 claimed obvious subject matter, and thus were unpatentable under § 103.

On November 30, 2021, before institution of a post-grant review, Columbia notified the Board of its intent to file a petition for a certificate of correction under 35 U.S.C. § 255. The Board noted that Columbia did not need to ask its permission before making such a filing, but nonetheless gave such permission; and it stated that it "d[id] not decide at this juncture whether the proposed certificate of correction, if and when issued, would have effect in this proceeding." J.A. 367–68. On December 2, 2021, Columbia sought a certificate of correction of claims 5, 11, 16, and 17, and

the correction issued on December 23, 2021. The correction relevant to this appeal replaced "a joist" in the preamble of claim 16 with "a structural component."

The Board instituted a post-grant review on March 17, 2022. After institution, Columbia filed a contingent motion to amend the claims under 35 U.S.C. § 326(d)(1), proposing for particular claims in the patent as issued substitute claims that the Board should consider if the corresponding issued claims were held unpatentable. *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, Paper 46 at 1 (P.T.A.B. June 9, 2022) (*Contingent Motion*); *see* 37 C.F.R. § 42.221 (describing motion to amend practice). Columbia's listing of the issued claims for which substitutes were contingently proposed, however, used the versions from the certificate of correction, J.A. 741 n.4, and the Board indicated that Columbia should file a revised motion "us[ing] the conventional underlining and strikethroughs to designate the [] [c]orrections." *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, Paper 51 at 4–5 (P.T.A.B. Sept. 26, 2022) (*Preliminary Guidance*) (emphasis omitted). Columbia did so, showing the corrections "with additions underlined and deletions strickenth[r]ough or double bracketed." *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, Paper 53 app. A at 3 (P.T.A.B. Oct. 13, 2022) (*Revised Contingent Motion*).

Among the proposed amendments was substitute claim 32 for original claim 9. *Revised Contingent Motion*, at 7. Substitute claim 32 depended indirectly on substitute claim 24. *Id.* at 3–4, 6–7. Simpson challenged both claims, as relevant here, for lack of enablement. *Simpson Strong-Tie Co. v. Columbia Insurance Co.*, PGR2021-00109, Paper 56 at 4 (P.T.A.B. Nov. 23, 2022) (*Opposition to Contingent Motion*).

C

The Board issued its Final Written Decision on March 15, 2023. The Board held most claims unpatentable.

*Decision*, at *61.  This appeal concerns only claims the Board upheld.  In summary: The Board determined that claims 13, 14, and 18–20 were not shown to be unpatentable for indefiniteness, *id.* at *10–15, *61, and it granted Columbia's motion to enter substitute claim 32 and determined that it was not unpatentable for lack of enablement, *id.* at *47–49.

More specifically, for claims 13 and 14, the Board rejected Simpson's contention that the limitation "each extension flange lying in an extension flange plane"—in claim 1, on which claims 13 and 14 depend—rendered the claims indefinite.  *Id.* at *10–14.  Simpson argued that the limitation fails to inform a person of ordinary skill of "where the [three-dimensional] 'extension flange' is located relative to the [two-dimensional] 'extension flange plane.'"  *Id.* at *10.  The Board concluded otherwise, noting in particular "several instances where prior art patents or published patent applications for joist or structural component hangers describe various three-dimensional objects or flanges as lying in planes."  *Id.* at *11; *see also id.* at *13–14.

For claims 18–20, the Board rejected Simpson's contention that the claim term "the structural component"—in the body of claim 16, on which claims 18–20 depend—rendered the claims indefinite because it lacked antecedent basis.  *Id.* at *14.  The Board relied on the phrase "a joist" in the preamble of claim 16.  *Id.* at *14–15.  The Board agreed with Columbia that the relevant artisan "knows that joists are a type of structural component" and thus "would have understood [that] the term 'a joist' provided antecedent basis for the term 'the structural component.'" *Id.* at *14 (citing J.A. 655–56).

For substitute claim 32, the Board rejected Simpson's contention that the claim was not enabled because, like claim 24 on which it depended, it did not claim "a top flange having fastening elements," which Simpson asserted was "essential" for the operability of the described hanger.  *Id.*

at *47.  The Board found no expert testimony to support Simpson's assertion that "the skilled artisan would not have been able to practice the claimed invention, where it includes hangers without top flanges, without undue experimentation." *Id.* at *48.  The Board also noted that the specification itself discloses that "[o]ther configurations are within the scope of the present invention, such as a different number of nail holes, or alternate fastening structure such as nailing teeth or other appropriate structure for fastening the hanger to the wall" and concluded that Simpson's "impossibility" argument was not convincing.  *Id.* (emphasis omitted).  The Board further explained that Simpson's expert testimony that "face-mounted hangers were known in the art and that the skilled artisan would have been familiar with face-mounted hangers" contradicted Simpson's arguments of undue experimentation.  *Id.* at *49.

The Director denied Simpson's request for Director Review on May 8, 2023, and Simpson timely filed its notice of appeal on May 17, 2023.  *See* 35 U.S.C. §§ 141(c), 329; 37 C.F.R. § 90.3(a)(1).  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

We review the Board's legal conclusions without deference and its factual findings for substantial evidence.  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).  We decide de novo whether challenged agency action is "not in accordance with the law or without observance of procedure required by law."  *EmeraChem Holdings, LLC v. Volkswagen Group of America, Inc.*, 859 F.3d 1341, 1345 (Fed. Cir. 2017) (cleaned up) (citing 5 U.S.C. § 706).

Whether a claim construction is correct is a question of law, with analysis of intrinsic evidence reviewed without deference and any relevant subsidiary factual findings reviewed for substantial evidence.  *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 329, 331–32 (2015);

*In re CSB-System International, Inc.*, 832 F.3d 1335, 1340 (Fed. Cir. 2016). Indefiniteness and enablement are both questions of law decided de novo, but findings of factual underpinnings are reviewed for substantial-evidence support. *See Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016) (discussing indefiniteness); *Trustees of Boston University v. Everlight Electronics Co.*, 896 F.3d 1357, 1361 (Fed. Cir. 2018) (discussing enablement). A claim is unpatentable for indefiniteness if it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). A claim is unpatentable for lack of enablement if it does not "teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Trustees*, 896 F.3d at 1362 (citing *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)) (internal quotation marks omitted); *see Amgen Inc. v. Sanofi*, 598 U.S. 594, 610, 612 (2023) (stating that "the specification must enable the full scope of the invention as defined by its claims" and that "a specification may call for a reasonable amount of experimentation to make and use a patented invention").

## A

We begin with Simpson's argument that claims 13 and 14 are indefinite because they "fail[] to define the extension flange plane with reasonable certainty." Simpson Opening Br. at 38. As part of this argument, Simpson challenges the Board's construction of the relevant claim term. *Id.* at 47–51. Simpson's arguments are unpersuasive.

The Board construed "each extension flange lying in an extension flange plane" as requiring that "for each extension flange[,] an extension flange plane is within the extent of the extension flange from the channel-shaped portion to the connection portion." *Decision*, at *13. Simpson challenges that construction on the ground that it "does not

account for the extension flanges' bends" and, actually, could not do so, because "requiring the *entirety* of the extension flanges to lie in a plane effectively makes it impossible for a multi-planar extension flange to satisfy the limitation." Simpson Opening Br. at 49–50. Relatedly, Simpson contends that, with a two-dimensional "plane" required, a skilled artisan could not tell where on the three-dimensional flange the relevant plane is, making the claim language indefinite. *Id.* at 41–42.

One problem with Simpson's argument is that it misreads the Board's construction as requiring the *flange* to lie entirely within the *plane*, when the Board's construction requires something like the opposite, *i.e.*, that the *plane* be within the extent of the *flange*. *Decision*, at \*13. A second problem is that the Board plainly did "account for the extension flanges' bends," Simpson Opening Br. at 49, explaining, with reference to an illustration, that "the bends (or bent portions) at the ends of the extension flanges . . . have radiuses small enough to allow an extension flange plane to remain *within the extent* of the extension flange *from* the channel-shaped portion *to* the connection portion," *Decision*, at \*12.

Simpson's challenge rests at bottom on reading the claim language, which does refer to a flange lying in a plane, as having a mathematical (geometrical) meaning—*i.e.*, as using "plane" as something having only two dimensions, which cannot contain a three-dimensional, multi-planar object. The "impossib[ility]" of that result, Simpson Opening Br. 49–50, shows that the Board was correct to reject the attribution of a mathematical meaning in the present context, which instead calls for a meaning in which "plane" refers to an orientation of a (largely planar) object. *Decision*, at \*12. Though perhaps not necessary, expert testimony explained that, in this context, the relevant artisan "would recognize that when the phrase 'lying in a . . . plane' is used in reference to a three[-]dimensional object— in this case the extension flange—the end-to-end extension

of the object can be effectively described as being arranged in the plane." J.A. 3597–98 ¶ 119. And the usage is confirmed by "various prior art references," which "describe objects, particularly joist hanger objects, as lying in planes." *Decision*, at \*11 (citing J.A. 3602–13 ¶¶ 128–44); *see In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999) ("Prior art references may be 'indicative of what all those skilled in the art generally believe a certain term means.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996))). These references include two of Simpson's own patent applications, both of which describe three-dimensional objects as lying in a plane. *See, e.g.*, J.A. 3602 ¶ 130 ("stiffening elements"); J.A. 3603 ¶ 131 ("return leg(s)"); J.A. 3604 ¶ 132 ("flanges").

Correcting Simpson's misunderstanding of the claim language defeats almost all of Simpson's indefiniteness arguments. Simpson makes one indefiniteness argument that is related but slightly different. It asserts that the claims are indefinite because they take an "internally inconsistent approach for defining the planes," pointing to another limitation that defines the "base plane" by reference to the base's "upper surface." Simpson Opening Br. at 39–41; *see* '867 patent, col. 12, lines 22–24 ("the base having an upper surface configured to engage the structural component, the upper surface lying in a base plane"). But the in-context meaning of "plane" to designate orientation can apply to both an object like a flange and a "surface" of such an object. This other claim language does not contradict the proper orientation understanding of "plane" and "lying in" language or, therefore, show indefiniteness. Accordingly, we agree with the Board that claims 13 and 14 are not unpatentable for indefiniteness.

B

We reject Simpson's challenge to the Board's upholding of claims 18–20 as well. Simpson Opening Br. at 26–38. This challenge focuses on language in claim 16 as issued,

on which claims 18–20 depend: "a channel-shaped portion configured to receive the structural component, the channel-shaped portion including a base configured to receive an end portion of the structural component thereon to support the structural component and side panels extending upward from the base." '867 patent, col. 13, lines 40–45. Before the certificate of correction, the preamble referred to "a joist"; after, it referred to "a structural component." *See supra* p. 7.

1

We see no reversible error in the Board's rejection of Simpson's indefiniteness challenge to the pre-corrected version of claim 16. Simpson argues that the phrase "the structural component" in the body of the claim requires an antecedent (because of "the") but that it is unclear what that antecedent is. We disagree. It is clear what the antecedent is—namely, the phrase "a joist" in the preamble. It is a familiar role for preambles to provide antecedents for phrases in the body of the claim. *See, e.g., In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019). That is just what "a joist"—and only "a joist"—does.

The phrase "the structural component" in the claim body therefore means "a joist." It has an antecedent basis that itself has not been shown to lack a meaning that would be reasonably certain to a relevant artisan. *Nautilus*, 572 U.S. at 901. That conclusion appears sufficient to uphold the Board's rejection of the indefiniteness challenge.

But it is worth adding the following about the claim limitation as a whole (quoted above), given a contention made by Columbia. The claim body's phrase (with the "joist" meaning) limits what is claimed, as it helps define a property of the claimed hanger—by what it is "configured

to" allow to fit into it and be carried by it.[2]  But the claim does not require actual use of a joist, rather than, say, a truss.  And it may well be that a hanger configured to receive and carry a joist is not materially different from one configured to receive and carry a truss (or any other contemplated "structural component"), as suggested by the specification's repeated treatment of at least joists and trusses together.  *See* '867 patent, col. 1, lines 32–36; *id.*, col. 4, lines 10–12; *see also* J.A. 3623–24 ¶¶ 174, 175.

We conclude that we have been presented no persuasive basis for upsetting the Board's rejection of the indefiniteness challenge to pre-correction claim 16 or, therefore, claims 18–20, which depend on pre-correction claim 16.

2

We also conclude that the Board did not, in fact, adjudicate the patentability of post-correction claim 16 or, therefore, post-correction claims 18–20.

In the institution decision, the Board assessed the indefiniteness challenge to claim 16 "based on the original phrasing."  J.A. 524.  The Board did not indicate that it would be adjudicating the post-correction version when it insisted that Columbia alter its presentation in the contingent motion to amend, as described *supra* p. 7.  In the final written decision, the Board indicated that it had not reached a conclusion about "whether the Certificate of Correction has effect in this proceeding." *Decision*, at \*14 n.4, \*15;  *see also* J.A. 368 (Dec. 2, 2021 Order).  The Board stated that "[its] determination as to [Simpson's] indefiniteness challenge is based on the *original* phrasing of

---

    [2]   Simpson suggests that the Board determined that the preamble of claim 16 was not "limiting," Simpson Opening Br. at 38, but that assertion is incorrect, as the Board found the preamble of only claim 1, not 16, to be non-limiting.  *See Decision*, at \*19–20.

claim 16." *Decision*, at *15 (emphasis added). When it added that it "*would* reach the same result regardless of whether the Certificate of Correction has effect in the proceeding," *id.* (emphasis added), it was stating only a self-evident truism: When the sole basis for the indefiniteness contention about claim 16 (the fact that "the structural component" was not identical to "a joist") was eliminated, of course the indefiniteness challenge on that basis would be meritless.

We see nothing in the final written decision that fairly supports an understanding of the decision as adjudicating the patentability of post-correction claim 16 (or the derivatively corrected dependent claims). Given our clarification in that way of the scope of the Board's decision, Simpson agrees that we need not address its arguments about process errors by the Board. Oral Arg. at 00:40–01:01, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1944_12062024.mp3.

## C

Simpson's final argument is that substitute claim 32 is not enabled because, like substitute claim 24 (on which it indirectly depends), it does not claim the "top flanges"—which Simpson says are "essential" because, without them, the claimed invention would be "inoperable." Simpson Opening Br. at 52–54. The Board rejected that argument. *Decision*, at *47–49. We agree with the Board.

First, the specification does not support Simpson's argument that the top flanges are "essential." Rather, the specification contains a "broad disclosure" describing other means of attachment: "Other configurations are within the scope of the present invention, such as a different number of nail holes, or alternate fastening structure such as nailing teeth or other appropriate structure for fastening the hanger to the wall." '867 patent, col. 6, lines 53–57, quoted in *Decision*, at *48. The specification also repeatedly refers to "a connection portion [] configured for attachment to the

wall," without limiting such connection portion to a top flange. '867 patent at Abstract; *id.*, col. 2, lines 18–19, 49–50. Because the specification indicates that the top flanges are not "essential," Simpson's position is not supported by our predecessor court's decision in *In re Mayhew*, which involved a claimed invention that was "*practicable because of*" the essential feature and a patent that did not contemplate an embodiment without that feature. *In re Mayhew*, 527 F.2d 1229, 1232–33 (CCPA 1976).

The Board considered Simpson's argument that expert testimony offered by Columbia conceded inoperability without the top flanges, but it determined that Simpson was "mischaracterizing the . . . testimony." *Decision*, at \*48. It explained that "Dr. Serrette testifie[d] that the specific hanger shown in the drawings of the '867 patent, specifically Figure 2, would be inoperable *if one simply cut off the top flanges*," not that the relevant artisan would be unable to practice the claimed invention without undue experimentation. *Id.* (emphasis added). The Board further found that Simpson cited "no testimony from [its own expert] Mr. Fennell that the skilled artisan would not have been able to practice the claimed invention, where it includes hangers without top flanges, without undue experimentation." *Id.* Relatedly, the Board found that prior art describing face mounted (as opposed to top mounted) hangers "plainly contradicts [Simpson's] allegation that it would have been 'impossible' or would have required undue experimentation for the ordinarily skilled artisan to have practiced the claimed invention, where it includes hangers without top flanges (i.e., is a face mount hanger rather than a top mount hanger)." *Id.* at \*49. We see no reversible error in those determinations or in the Board's rejection of the enablement challenge to substitute claim 32.

## III

For the foregoing reasons, we affirm the Board's final written decision as to claims 13, 14, 18–20, and substitute claim 32.

**AFFIRMED**